```
                   UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION


PENG Z. ANDERSON                                        PLAINTIFF


VS.                          CIVIL ACTION NO. 3:10cv469-TSL-MTP


MISSISSIPPI BAPTIST MEDICAL
CENTER, et al.                                         DEFENDANTS
```

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Mississippi Baptist Medical Center (MBMC) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Peng Z. Anderson has not responded to the motion.  The court, having considered the memorandum of authorities and exhibits submitted by MBMC in support of its motion, concludes that the motion is well taken and should be granted.

Plaintiff Anderson brought this action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging she was terminated from her employment with MBMC because of her race and national origin (Chinese), and additionally asserting claims under state law for breach of contract, tortious interference with contract, intentional infliction of emotional distress and negligence, also relating to her alleged discriminatory termination.  MBMC seeks summary judgment on each of these claims.

With respect to her Title VII claim, MBMC argues that plaintiff cannot create a genuine issue of material fact because she has no direct evidence of discrimination and cannot establish a prima facie case of discrimination.  It further submits that even if plaintiff could establish a prima facie case, she still cannot prevail because she has no evidence to suggest that MBMC's articulated legitimate, nondiscriminatory reason for her termination is pretext for discrimination.  In the court's opinion, the record fully supports MBMC's position.

The evidence of record in the case at bar establishes the following pertinent facts:  Plaintiff, who is native born Chinese, received her Registered Nurse (RN) license in March 2009, and in April 2009, was hired by MBMC to work on the MBMC's 5S Unit, which is a urology and post operative floor.  Although there were some initial performance issues which resulted in plaintiff's twice being placed in Performance Improvement Plans, plaintiff ultimately was judged competent to perform the core requirements of her position.

On September 15, 2009, plaintiff worked the night shift and was assigned to a patient who had just undergone surgery on his throat and whose medical record stated he was "NPO," which meant he was to receive nothing by mouth.  Notwithstanding this directive, around 9:00 p.m., when the patient began to run a fever, plaintiff crushed up some Tylenol and mixed it into a

2

spoonful of applesauce for the patient to eat.  A few hours later, the patient's condition deteriorated to the point where a "code" had to be called, and he was transferred to the Intensive Care Unit around 1:00 a.m.

Defendant's computer records show that around 3:30 a.m. on the morning of September 16th, plaintiff logged onto a hospital computer using her personal user identification and password, accessed the subject patient's medical record, and, after going to different parts of his file (including the Medication Administration Record), at 3:50 a.m., "inactivated" or deleted the dose of Tylenol she had initially scanned into the patient's medical record.  That is, she deleted the entry from the Medication Administration Record so it would not appear as having been given.  When this activity was subsequently discovered during an investigation of the incident, plaintiff was terminated for falsifying a medical record, which under MBMC policies, is a Class C offense that justifies immediate termination.  Following her termination, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, and after receiving a notice of right to sue, brought the present action.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42

3

U.S.C. § 2000e-2(a)(1).  Title VII discrimination can be established through direct or circumstantial evidence.  <u>Laxton v. Gap Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003).  Where the plaintiff has not presented direct summary judgment evidence of discrimination, the court applies the burden-shifting framework in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  In a case such as this, involving a work rule violation, "[a] plaintiff's prima facie case of discrimination ... consists of proof that the plaintiff (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) ' "either ... did not violate the rule or that, if [she] did, [white] employees who engaged in similar acts were not punished similarly'." <u>Ray v. Nissan North America, Inc.</u>, Civil Action No. 3:08CV391TSL-JCS, 2009 WL 1686575, 1 (S.D. Miss. June 16, 2009) (citing <u>Okoye v. Univ. of Tex. Houston Health Sci. Ctr.</u>, 245 F.3d 507, 512-13 (5th Cir. 2001), and <u>Mayberry v. Vought Aircraft Co.</u>, 55 F.3d 1086, 1090 (5th Cir. 1995)).

Once a plaintiff has made a prima facie case, the employer must provide "some legitimate nondiscriminatory reason" for the adverse action taken.  <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S. Ct. 1817.  If the employer offers a legitimate, nondiscriminatory reason for the plaintiff's treatment, the presumption of discrimination derived from the plaintiff's prima facie case

4

dissipates, and the plaintiff bears the ultimate burden of persuading the trier of fact that the defendant engaged in intentional discrimination.  <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001).  To satisfy this burden, a plaintiff must produce substantial evidence that the employer's proffered reasons for its actions were a pretext for discrimination or, regardless of the nondiscriminatory reason, the discriminatory reason was a motivating factor in the employer's action.  <u>See Appel v. Inspire Pharmaceuticals, Inc.</u>, No. 10-10960, 2011 WL 2203184, 2 (5th Cir. June 7, 2011) (citations omitted).

In support of its summary judgment motion, defendant first argues that plaintiff has no direct evidence of race/national original discrimination, and that her claim is therefore properly analyzed under <u>McDonnell Douglas</u>.  Plaintiff has not responded and hence has not contended otherwise.[1]

---

[1]     Defendant contends the only evidence plaintiff could possibly claim as direct evidence of discrimination are comments relating to her speech.  It is undisputed that plaintiff had a Chinese accent; she also had a tendency to speak rapidly, and according to defendant, this made her difficult to understand at times.  Plaintiff was told she needed to "slow [her] speech down when you are speaking.  Your English is understandable, but not when you are speaking rapidly."  Defendant submits that such comments are not "direct evidence" of discrimination because, *inter alia*, they related not to plaintiff's accent but to the quickness of her speech, they were not proximate in time to her termination, and they were not related to the decision to terminate her employment.  The court agrees.  <u>See Dulin v. Board of Com'rs of Greenwood Leflore Hosp.</u>, -- F.3d --, 2011 WL 2654738, 4 (5th Cir. July 8, 2011) (to constitute "direct evidence" of discrimination, comments "must be (1) related [to the protected class of persons of which the plaintiff is a member]; (2)

In the court's opinion, plaintiff can establish the first
three elements of her prima facie case: she is a member of a
protected class, was at least minimally qualified for her
position[2] and was subject to an adverse employment action.

proximate in time to the [complained-of adverse employment
decision]; (3) made by an individual with authority over the
employment decision at issue; and (4) related to the employment
decision at issue.") (citations omitted); Jackson v. Cal-Western
Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010) ("Comments that
do not meet these criteria are considered 'stray remarks', and
standing alone, are insufficient" to establish intentional
discrimination).
    Defendant further asserts, and in the court's opinion
correctly so, that even if such comments were considered to
qualify as direct evidence of discrimination, plaintiff still
could not prevail since defendant has established that regardless
of her race or national origin, it would have terminated her for
falsifying a patient's medical records. See Fierros v. Tex. Dep't
of Health, 274 F.3d 187, 192 (5th Cir. 2001)("In such 'direct
evidence' cases, 'the burden of proof shifts to the employer to
establish by a preponderance of the evidence that the same
decision would have been made regardless of the forbidden
factor.'")(citation omitted).

    [2]   Defendant argues that plaintiff was not qualified for
the position because "[a]ny nurse that could do [what plaintiff
did, i.e., falsify patient records] is not qualified for the
position to take care of seriously ill patients."  However, the
questions whether plaintiff was qualified for the position and
whether she committed a work rule violation are separate issues.
To demonstrate qualification for the position for purposes of a
plaintiff's prima facie case requires only that the plaintiff show
that she met the minimal qualifications for the position.  See
Johnson v. Coca-Cola Enterprises Inc., No. Civ. A. 05-1479, 2006
WL 2873474, 6 (W.D. La. Oct. 6, 2006) ("At the prima facie stage,
an employee-plaintiff is only required to show he met the minimal,
objective qualifications for the position.") (citing Pratt v. City
of Houston, 247 F.3d 601, 606 n.2 (5th Cir. 2001)(holding an
applicant who meets the "minimal qualifications" of the position
satisfies the qualification element of the prima facie case)).
The fact that defendant provided plaintiff a "Job Competency
Certification" in July 2009 is certainly strong evidence that
plaintiff met the minimal qualifications for the position.

However, to survive summary judgment, plaintiff must also create a genuine issue of material fact on the issue of whether she, in fact, falsified the patient's medical record or, alternatively, on whether other employees outside her protected class who committed such an infraction were not terminated.  In the court's opinion, there is no evidence that would support a finding that others were treated more favorably than plaintiff.  On the contrary, defendant has submitted proof, unchallenged by plaintiff, that every RN, including plaintiff, in the nine units under the direction of Brenda Howie who has been accused of falsifying medical records has been terminated.

Whether there is sufficient evidence to create a triable issue on the question whether plaintiff actually committed the offense is perhaps debatable.  While plaintiff has denied that she did so, the evidence to the contrary is overwhelming.  Plaintiff admits she administered Tylenol to the patient, who was under the NPO order, and the evidence is undisputed that the patient coded several hours later.  It is undisputed that the patient's medical records were altered a few hours after he coded by someone using plaintiff's employee identification and confidential password.  Plaintiff admits she was on the computer in the early morning hours of September 16th, during the relevant time frame.  Plaintiff

7

does deny that she changed the records; but her denial rings
hollow in light of the record evidence.[3]

However, assuming that plaintiff could arguably establish a
prima facie case, she clearly cannot prove defendant's proffered
legitimate, nondiscriminatory reason for her termination was
pretext for discrimination.  In evaluating a claim of pretext, "a
fired employee's actual innocence of his employer's proffered
accusation is irrelevant as long as the employer reasonably
believed it and acted on it in good faith."  Cervantes v. KMGP
Services Co. Inc., 349 Fed. Appx. 4, 10, 2009 WL 2957297, 4 (5th
Cir. 2009).  Here, there is nothing in the record to suggest that
defendant did not reasonably believe that plaintiff had falsified
the patient's medical record or that its decision to terminate her
employment was based on anything other than its good faith belief
that she had committed this offense.  Accordingly, plaintiff
cannot establish pretext.  Her Title VII claim will therefore be
dismissed.[4]

---

[3]    Plaintiff has offered no evidence, or plausible
explanation of how the record was changed or by whom, if not by
her.  She has merely speculated that she might have left the
computer screen open and someone else did it; or that someone else
knew her password and used it to inactivate the record of her
administering Tylenol to the patient.

[4]    Defendant also points out in its motion that the fact
that the same individual who hired plaintiff (and who knew of
plaintiff's race/national original at the time she hired her)
gives rise to a "same actor" inference, which requires plaintiff
to "come forward with more than a 'tenuous inference of pretext'
to meet [her] burden at this third step."  Watkins v. Johnson,

Plaintiff's state law claims are also due to be dismissed. Defendant has presented uncontroverted evidence that plaintiff had no employment contract with MBMC and was instead employed at will. Her claim for breach of contract thus fails.  And since she had no contract of employment, her claim for tortious interference with her alleged contract of employment also fails.  Her claim for negligence is barred by the exclusivity provisions of the Mississippi Workers' Compensation Act.  See McNeill v. City of Canton, Miss., Civ. Action No. 3:06CV74DPJ-JCS, 2008 WL 249437, 15 (S.D. Jan. 28, 2008) (holding that "allegations sounding in negligence are inadequate to avoid the exclusivity provision"); Miss. Code. Ann. § 71-3-9.  And lastly, she cannot succeed on her claim for intentional infliction of emotional distress since she has identified no conduct which rises to the level of outrageousness to support such a claim.  See King v. Newton County Bd. of Sup'rs, 144 Fed. Appx. 381, 385, 2005 WL 1750102, 3 (5th Cir. 2005) ("Under Mississippi law, to create liability for intentional infliction of emotional distress, the complained-of conduct 'must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (citation omitted).

---

Civil Action No. 3:10-cv-00025, 2010 WL 5479169, at *5 (W.D. La. Dec. 30, 2010).  However, defendant need not resort to the same actor inference, since plaintiff has *no evidence* of pretext.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 18th day of August, 2011.


/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE